736 S.W.2d 617 (1987)
Celeste Eugenia HOPKINS, a/n/f of Celeste Adeline Hopkins, Petitioner,
v.
SPRING INDEPENDENT SCHOOL DISTRICT et al., Respondents.
No. C-5209.
Supreme Court of Texas.
February 25, 1987.
Rehearing Denied October 7, 1987.
Victor R. Rodriguez, Hocker, Rodriguez & Morrow, George W. Wilhite, Wilhite, Gilbreath, Squier, Hamm & Caridi, Inc., Houston, for petitioner.
Daryl G. Dursum, Coats, Yale, Holm & Lee, James A. McDaniel, Houston, for respondents.
CAMPBELL, Justice.
This is an appeal from a summary judgment rendered for Spring Independent School District and several of its employees. The court of appeals affirmed the trial court's judgment. 706 S.W.2d 325. We affirm the judgment of the court of appeals.
Celeste Adeline Hopkins, a student at an elementary school in the Spring Independent School District, suffers from cerebral palsy. Her mother, Celeste Eugenia Hopkins, alleges that while the students were left unsupervised Celeste Adeline was pushed into a stack of chairs and sustained a head injury. She had mild convulsions, developed cold sweats and became dazed and incoherent. The teacher did not call for help or send her to the school nurse. Later, an occupational therapist noticed her condition and took her to the nurse, who told Celeste Adeline to stay at school. The nurse did not contact her mother, an employee *618 of the school district, and did not contact her doctors, although the school knew the names of the doctors.
At the end of the school day, Celeste Adeline rode on the school bus to the day care center. She suffered severe convulsions while on the bus. The bus driver contacted a supervisor, requesting a school nurse be provided at the next stop, but none was provided. The driver was told to take her to the day care center, where she finally received medical treatment.
Two years later Celeste Adeline's mother sued Spring I.S.D., the bus supervisor, the school principal, the school nurse and the teacher. She claimed the school personnel's negligence and gross negligence in failing to provide adequate care dramatically decreased Celeste Adeline's life expectancy. Summary judgment was rendered for the school district and the employees based on the immunity granted the school district under the Tort Claims Act and the employees under the Education Code.
We are asked to abrogate the immunity enjoyed by school district employees under section 21.912 of the Texas Education Code. This would require us to overrule the recent Supreme Court case of Barr v. Bernhard, 562 S.W.2d 844 (Tex.1978).
Mrs. Hopkins contends that school personnel should be liable for their negligent acts which result in serious bodily injury to students. The Texas Education Code, section 21.912, provides tort immunity to professional school employees except:
No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.
Tex.Educ.Code Ann. § 21.912 (Vernon Supp.1986). This statute was construed in Barr v. Bernhard. This court held a professional school employee is not personally liable for acts done within the scope of employment and which involve the exercise of judgment or discretion, except when disciplining a student the employee uses excessive force or negligence which results in bodily injury to the student. Barr, 562 S.W.2d at 849.
The Barr court held the statute is ambiguous because "it is inaccurate to say that a person `uses negligence'; negligence occurs as a result of an act or omission by an individual." Therefore, the court determined the legislative intent of the statute. Id. at 848. The court concluded that when subsection (b) is read in conjunction with subsection (c), an interpretation that the last clause of subsection (b) subjects employees to liability for any negligent act which results in bodily injury is untenable. Subsection (c) states, "This section is not applicable to the operation, use, or maintenance of any motor vehicle." The court reasoned that if subsection (b) were read to exclude from immunity all negligent acts of school employees, not merely those incident to discipline, there would be no need for subsection (c) to explicitly negate immunity in the operation, use, or maintenance of a motor vehicle.
Barr was decided eight years ago, and the legislature has had ample time to change the statute if that construction did not comport with legislative intent. It has not done so. Indeed, the legislature has broadened the immunity provided by section 21.912(b) by enacting section 13.906 of the Texas Education Code in 1981 and section 13.503 in 1984.
Section 13.906(a) applies to student teachers:
A person assigned to perform student teaching in a student teacher center is entitled to the same protection of law accorded to the supervising teacher and the principal of the school in which the student teacher serves or acts in the course of employment. This protection includes the limitation of liability accorded all professional employees as specified in Section 21.912 of this Code. While serving as a student teacher, a person shall comply with the rules of the school and of the board of trustees of the district *619 serving as the student teacher center.
Tex. Educ.Code Ann. §§ 13.503, 13.906(a) (Vernon Supp.1986). Subsection (c) of section 13.503 states: "A non-certified teacher is immune from personal liability for acts or omissions in the scope of employment to the same extent that a certified teacher is immune. . . ." The Barr decision had been law for three years when the earliest of these statutes was passed. The legislature had time to consider Barr's effect and chose to add to, not abrogate, the immunity granted by section 21.912. This court stated in Barr, "We will adhere to our decisions in the past that the waiver of governmental immunity is a matter to be addressed by the legislature." Lowe v. Texas Tech University, 540 S.W.2d 297 (Tex. 1976).
Hopkins also contends the school employees could be liable under section 21.912 because their actions constituted "negligent discipline." She claims the child was disciplined by submitting to the authority and control of her teacher, the school nurse and other employees. We do not accept such a broad interpretation of the term "discipline."
In construing a statute, if the legislature does not define a term, its ordinary meaning will be applied. Satterfield v. Satterfield, 448 S.W.2d 456 (Tex.1969). "Discipline" in the school context ordinarily describes some form of punishment. The opinion in Diggs v. Bales describes "negligent discipline" as "punishment [which] involves no force, but rather requires some action on the part of the student as a result of which the student suffers bodily injury," as in ordering a student to run laps. 667 S.W.2d 916, 918 (Tex.App.Dallas 1974, writ ref'd n.r.e.) We hold "negligent discipline" is not involved.
Hopkins also asserts the court of appeals erred in holding the school district and the bus supervisor immune from liability under the Texas Tort Claims Act. That Act grants immunity to school districts and their employees from liability for damages caused by negligence except in circumstances relating to the use, maintenance or operation of motor vehicles. Tex.Civ.Prac. & Rem. Code Ann.§ 101.051 (Vernon 1986) (formerly article 6252-19 § 19A).
Hopkins argues the school district and the bus supervisor cannot claim this immunity because 1) the child's injuries were aggravated when she had seizures on the bus and 2) the defendants were negligent in failing to provide adequate medical care. Therefore, she claims, the injuries arose from the "use or operation of a motor vehicle." Several Texas courts have held that when injuries are not the proximate result of the use or operation of the school bus, but the bus provides the setting for the injury, the actions do not fall within the section 101.051 exception to immunity. See Jackson v. City of Corpus Christi, 484 S.W.2d 806 (Tex.Civ.App.Corpus Christi 1972, writ ref'd n.r.e.); Brantley v. City of Dallas, 545 S.W.2d 284 (Tex.Civ.App. Amarillo 1976, writ ref'd n.r.e.); Estate of Garza v. McAllen Independent School District, 613 S.W.2d 526 (Tex.Civ.App. Beaumont 1981, writ ref'd n.r.e.); Pierson et al. v. Houston Independent School District et al., 698 S.W.2d 377 (Tex.App. Houston [14th Dist.] 1985, writ ref'd n.r.e.). Applying the common and ordinary meaning of the words "operation" and "use", Celeste Adeline's injury could not have arisen from the use of a motor vehicle as contemplated by the statute.
We remain committed to our original interpretation of section 21.912 of the Education Code. The judgment of the court of appeals is affirmed.
KILGARLIN, J., dissenting, joined by RAY and MAUZY, JJ.
KILGARLIN, Justice, dissenting.
I respectfully dissent. Even if the court were correct in its adherence to Barr v. Bernhard, 562 S.W.2d 844 (Tex.1978), this cause would have to be reversed and remanded as to the defendant Charles Bammel, Spring's Director of Transportation.
By its clear language, Tex.Educ.Code Ann. § 21.912(b) is applicable to professional school district employees. Bammel's summary judgment proof does not *620 place him in this category. While his affidavit states his job involves the exercise of judgment or discretion, it fails to state his employment requires certification, as mandated by section 21.912(d).
But, I would go further. I would overrule Barr v. Bernhard. The court's holding in that case was a product of faulty reasoning and conflicts with a majority of other jurisdictions which have followed the prevailing authority that the tort immunity of the school does not preclude liability of professional school employees for their negligence.[1] Commentators have also recognized that teachers may be liable to pupils for their negligence.[2] It is noteworthy that the court in this cause does not attempt to justify such faulty reasoning. Rather, the court says that because Bernhard has not been overruled by the legislature, it must be correct. This obeisance to a misguided notion of what constitutes legislative intent is disheartening. When one considers all of the rules operative in the respective houses of the legislature that prevent proposed legislation from even coming to a vote, it cannot be contended that legislative inaction amounts to legislative intent. Nevertheless, such argument is repetitive of the contention made by the dissent in Sanchez v. Schindler, 651 S.W.2d 249, 256 (Tex.1983). However, this court disposed of that thesis by saying "[i]naction of the legislature cannot be interpreted as prohibiting judicial reappraisal of the judicially created pecuniary loss rule. Bedgood v. Madalin, 600 S.W.2d 773, 780 (Tex.1980) (Spears, J., concurring). `[A] legislature legislates by legislating, not by doing nothing, not by keeping silent.' Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118, 121-22 (Mich.1960)."
Moreover, the court is extremely inconsistent in its application of its misguided concept of legislative intent. Almost contemporaneous with the handing down of this opinion is the rendition of the opinion in Crawford v. Coleman, 726 S.W.2d 9 (Tex.1987), wherein this court overruled Deveroex v. Nelson, 529 S.W.2d 510 (Tex. 1975). Like this case, both of those cases involved interpretation of statutory language. This court was not deterred in Crawford from giving a new interpretation to Tex.Ins.Code Ann. art. 21.23, although the legislature had over eleven years in which to amend the statute if it were dissatisfied with Deveroex. Yet, the legislature has remained silent. Like Justice Spears in Sanchez, I do not consider legislative inactivity to be legislative intent. All that I ask of my colleagues who do, is that they apply that concept uniformly. If legislative *621 inaction could not save Deveroex, why should it be used to preserve Bernhard? While I dissented in Crawford, I at least did so by giving support to the logic expressed in Deveroex, which is more than can be said for this court's silence as to the reasoning of Barr v. Bernhard.
If the court was wrong in Bernhard, we should admit so, rather than reaffirming it simply because seven other jurists reached a different conclusion from what we think right. As Associate Justice Livington Lindsay, speaking for the court, said over a century ago:
Certainly, in all doubtful cases, precedent and former adjudication of what the law may be should have great weight with all courts. But all courts would but subserve the interest of society and fulfill the obligations of conscience, by the observance of that remarkable institute of Justinian, so replete with wisdom and so pre-eminently just, in which it is ordered: `Let no judge or arbiter believe himself bound to follow official opinions which he holds not to be correct; nor even the judgment of the prefect or other magnates; nor those of the supreme court of prefecture and of other supreme courts; but we commend all our judges to follow truth, justice and law. It does not seem good to us, that if one judge decide wrong, his error should be extended to others. The decision of the judge should be founded on law, and not on precedents.'
Myers v. State, 33 Tex. 525, 542 (1870).
There can be little doubt that the court was wrong in its conclusions as to legislative intent in Barr v. Bernhard. Section 21.912 of the Texas Education Code became law in 1971. Its origin was S.B. 74 introduced by Senator Snelson of Midland. Section two of that bill provided that "no employee of any school district ... shall be personally liable for any act ... which act involves the exercise of judgment or discretion on the part of the employee." Section three of the bill defined "employee" as including "superintendents, principals, classroom teachers, counselors and other employees of a school district whose employment requires an exercise of discretion."
The bill was amended in the Senate Education Committee to change "employee" to "professional employee" and add after "judgment or discretion on the part of the employee" the language "except in circumstances where professional employees use excessive force in the discipline of students." The definition of "professional employee" was changed to read "whose employment requires certification and an exercise of discretion" and to add "supervisors" to the laundry list. After the bill, as amended by the Education Committee, was favorably reported to the Senate, Senator Snelson successfully tacked on two floor amendments, the first one reading "[a]mend committee amendment to S.B. 74, sec. 2, by striking the period at the end of the paragraph following the word `students' and adding the following: `or negligence resulting in bodily injury to students'." That left the bill in the form of the language ultimately adopted.
The general rule in respect to statutory interpretation is that "[c]ourts should carefully search out a statute's intent, giving full effect to all of its terms. `But they must find its intent in its language and not elsewhere. They are not the lawmaking body. They are not responsible for omissions in legislation'." Seay v. Hall, 677 S.W.2d 19, 25 (Tex.1984). However, a different rule attains when the statute is ambiguous. Section 21.912(b) of the Education Code is clearly ambiguous, as was recognized by the court in Bernhard, 562 S.W.2d at 848. Whether it was inartful drafting, or what, it is erroneous to say that one "uses" negligence. If a statute is ambiguous, a court, in interpreting that statute, is justified in looking to legislative intent. Huntsville Independent School District v. McAdams, 148 Tex. 120, 221 S.W.2d 546 (1949).
Fortunately, we have a clear expression of legislative intent in regards to section 21.912(b) in the form of a bill analysis prepared by the House Committee on Judiciary when it considered S.B. 74 after the measure, incorporating the Snelson floor *622 amendments, passed the Senate. That bill analysis states that the exception to non-liability of an employee is "where the employee uses excessive force or is negligent" (emphasis added). The amended Senate version passed the House intact and became law. Yet, the court in Bernhard totally overlooked this important item of legislative history. Instead, it rewrote the statute to in effect read that a professional school employee was not personally liable for acts done except in circumstances where disciplining a student, the employee uses excessive force or his negligence results in bodily injury to the student.
To reach its conclusion, the Bernhard court put great emphasis on the conflict that would exist if liability were imposed upon professional employees for their negligence and the fact that the second Snelson floor amendment made the statute inapplicable to the operation, use, or maintenance of a motor vehicle. The court said "[i]f the interpretation of subdivision (b) urged by Bernhard were followed, then subdivision (c) would be meaningless since liability for the negligent operation of a motor vehicle would necessarily be covered by the broader provisions of subdivision (b)." 562 S.W.2d at 849. This judicial legerdemain, if unexamined, has initial appeal. However, it is plagued with one major inconsistency. Paragraph (b) of section 21.912 deals with liability of professional employees to students. Paragraph (c) is an imposition of liability for all school district employees, professional or otherwise, not just as to students, but to the world at large, for their acts of negligence when motor vehicles are involved. As was observed in a Comment, Liability of Public Officials For Their Tortious Acts, 16 Hous.L.Rev. 100, 115 (1978):
This latter provision would be rendered meaningless only if the earlier provision encompassed all negligent activities involving motor vehicles that the latter language covered. That the earlier section does not purport to do, however. By its terms, it empowers only students suffering from negligently inflicted `bodily injury' to recover from official malefactors; by its terms, it declines to regulate personal or property injuries to non-students. In contrast, the latter subsection permits student and non-student alike to recover from officials unreasonably operating, using, or maintaining motor vehicles, whether they sue for personal or property damages.
Thus, it can be readily seen that the motor vehicle exemption is not rendered meaningless by an interpretation that professional school employees are liable for their negligent acts towards students.
Justice Sam Johnson articulated in his dissent in Bernhard many of the arguments that I have presented here, and with the exception of Justice Pope, met with the same lack of success as I have in the convincing of colleagues. Nevertheless, I believe that the court has erred, and therefore I dissent.
RAY and MAUZY, JJ., join in this dissenting opinion.
NOTES
[1] See Forgone v. Salvador Union School Dist., 41 Cal.App.2d 423, 106 P.2d 932 (1940): Buzzard v. East Lake School Dist., 34 Cal.App.2d 316, 93 P.2d 233 (1939); Adams v. Kline 239 A.2d 230 (Del.Super.1968); Miller v. Griesel, 261 Ind. 604, 308 N.E.2d 701 (1974); Anderson v. Calamus Com. School Dist., 174 N.W.2d 643 (Iowa 1970); Rose v. Bd. of Education, 184 Kan. 486, 337 P.2d 652 (1959); Cox v. Barnes, 469 S.W.2d 61 (Ky. Civ.App.1971); Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3d Cir.1977, writ ref'd); Brooks v. Jacobs, 139 Me. 371, 31 A.2d 414 (1943); Duncan v. Koustenis, 260 Md. 98, 271 A.2d 547 (1970); Lovitt v. Concord School Dist., 58 Mich.App. 593, 228 N.W.2d 479 (1975), rev'd on other grounds, Galli v. Kirkeby, 398 Mich. 527, 248 N.W.2d 149 (1976); Wire v. Williams, 270 Minn. 390, 133 N.W.2d 840 (1965); Clark v. Furch, 567 S.W.2d 457 (Mo.App.1978); Doktor v. Greenberg, 58 N.J.Super. 155, 155 A.2d 793 (1959); Ostrowski v. Board of Education of Coxsackie-Athens School Dist., 294 N.Y.S.2d 871, 31 A.D.2d 571 (1968); Drum v. Miller, 135 N.C. 204, 47 S.E. 421 (1904); Wentz v. Deseth, 221 N.W.2d 101 (N.D.1974); Baird v. Hosmer, 46 Ohio St.2d 273, 347 N.E.2d 533 (1976); Hutchison v. Toews, 4 Or.App. 19, 470 P.2d 811 (1970); Guerrieri v. Tyson, 147 Pa.Super.Ct. 239, 24 A.2d 468 (1942); DeGooyer v. Harkness, 70 S.D. 26, 13 N.W.3d 815 (1944); Eastman v. Williams, 124 Vt. 445, 207 A.2d 146 (1965); Crabbe v. County School Bd. of Northumberland Co., 209 Va. 356, 164 S.E.2d 639 (1968).
[2] Comment, Broad Tort Immunity Provided Texas Public Schools and Public School Personnel: A Reappraisal, 16 Tex.Tech L.Rev. 515 (1985); Comment, Professional School EmployeesThe Privileged Class?, 19 S.Tex.L.J. 664 (1978); Seitz, Legal Responsibility Under Tort Law of School Personnel and School Districts as Regards Negligent Conduct Toward Pupils, 15 Hastings L.J. 495 (1964); Teacher's Liability for Pupils InjuriesDuty of Supervision, 19 Main L.Rev. III (1967); Proehh, Tort Liability of Teachers, 12 Vand.L.Rev. 723 (1959); Ripps, Tort Liability of the Classroom Teacher, 9 Akron L.Rev. 19 (1975); Vacca, Teacher Malpractice, 8 U.Rich.L. Rev. 447 (1974); Schools and TeachersTort Liability in Our Changing Society, 8 U.Kan.L.Rev. 124 (1959).